# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHAD THOMAS ELIE<br><br>　　　　　　　　　　Petitioner,<br><br>vs.<br><br>KELLY HARRIGNTON, Warden, and EDMUND BROWN, JR., Attorney General of the State of California<br><br>　　　　　　　　　　Respondents. | Civil No.　09-CV-2920-H (PCL)<br><br>**ORDER**<br><br>**(1) DENYING PETITION FOR WRIT OF HABEAS CORPUS**<br><br>**(2) DENYING CERTIFICATE OF APPEALABILITY** |

On December 28, 2009, Chad Thomas Elie ("Petitioner"), a state prisoner proceeding *pro se*, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, challenging his conviction for attempted murder, assault with a firearm, and unlawful brandishing of a firearm. (Doc. No. 1 at 2; Lodg. No. 6 at 4.) Petitioner contends (1) that the trial court committed prejudicial error in denying his motion to bifurcate gang enhancement allegations; (2) that the trial court violated his Sixth Amendment right to a jury trial in denying a new trial motion; (3) that there was insufficient evidence to find him guilty of murder and brandishing a firearm; and (4) that the imposition of an upper-term sentence was contrary to Apprendi v. New Jersey, 530 U.S. 466, 490 (2000). (Doc. No. 1 at 6-9.) On July 6, 2010, Petitioner filed his First Amended Petition, naming the Attorney General of California as an additional respondent. (Doc. No. 11 at 1.) On April 8, 2011, the magistrate judge issued a Report and Recommendation that the

Court deny Petitioner's First Amended Petition. (Doc. No. 27.) Petitioner did not file objections by the April 22, 2011 deadline set by the magistrate judge. For the reasons set forth below, the Court **DENIES** Petitioner's First Amended Petition and adopts the Report and Recommendation.

## I.   PROCEDURAL HISTORY

Petitioner was convicted of unlawfully brandishing a firearm, attempted murder, and assault with a firearm. (Lodg. No. 6 at 1-2.) After the jury rendered its verdict, Petitioner filed a motion requesting a new trial based on the proffered testimony of two witnesses who did not testify at trial. (Lodg. No. 6 at 7.) The motion was denied because the two witnesses were not newly discovered and their testimony would not have resulted in different verdicts. (Id.)

Petitioner appealed his conviction to the California Court of Appeal. On November 6, 2008, the Court of Appeal affirmed the judgment. (Lodg. No. 6.) Petitioner filed a petition for review in the California Supreme Court. (Lodg. No. 7.) The state supreme court denied the petition without comment on February 18, 2009. (Lodg. No. 8.) Petitioner then filed this federal habeas petition. (Doc. No. 1.)

## II.   FACTUAL BACKGROUND

This Court gives deference to state court findings of fact and presumes them to be correct. See 28 U.S.C. § 2254(e)(1); see also Parke v. Raley, 506 U.S. 20, 35-36 (1992) (holding findings of historical fact, including inferences properly drawn from these facts, are entitled to statutory presumption of correctness). The relevant facts as found by the state appellate court are as follows:

> Elie was charged with offenses arising from three shooting incidents, occurring on September 6, 2003, July 15, 2004, and July 31, 2004. The latter two incidents were allegedly connected with the activities of a gang in Lemon Grove called Murder Krew (MK). After a jury trial, Elie was convicted of the offenses charged for the September 6, 2003, and July 31, 2004 incidents, but was not convicted of the offenses charged for the July 15, 2004 incident.
>
> The September 6, 2003 incident involved gunshots fired at a party in Crest by several individuals, including Elie. Elie was convicted of misdemeanor unlawful exhibition of a firearm for this incident.
>
> The July 15, 2004 incident occurred at about 10:00 or 11:00 p.m. when a group of friends (including Marlon Major (Marlon), Joseph Brown, Ronald McGee, and Joseph Barajas II) were sitting in or standing by two vehicles in front of the

Barajas family residence in Lemon Grove. Several other vehicles arrived in front of the residence. An occupant of one these vehicles yelled "MK, finish you off" and fired two or three gunshots out the passenger window. A bullet hit the windshield of the vehicle occupied by Brown. Marlon identified Elie as the person who yelled the gang statement and who shot the gun, and identified Elie's brother (Micah Elie (Micah)) as the driver of the vehicle in which Elie was a passenger. McGee also identified Elie and Micah as being in the car from which the shots were fired. Brown and Barajas were unable to identify the perpetrators. Micah testified on his own behalf, denying any involvement in the shooting. Micah also presented an alibi defense via his girlfriend, who testified she and Micah were together that night celebrating their anniversary.

For the July 15th incident, Elie and Micah were charged with attempted murder, discharging a firearm at an occupied vehicle, and assault with a firearm, with various gun and gang enhancement allegations. The jury acquitted Micah of all charges; acquitted Elie of attempted murder; and deadlocked on the remaining charges against Elie for this incident.

The third incident, which occurred around 9:00 or 10:00 p.m. on July 31, 2004, involved a shooting of Michael Major (Marlon's brother) in the driveway of the Barajas residence. During this incident, a group of males arrived at the driveway in a vehicle. One of the males yelled "MK," and the group then began shooting. Major, who was standing in the driveway about six feet from the assailants, was shot in the leg as he fled up the driveway. Major was in the hospital for one day. The bullet remains in his leg because it was not possible to remove it without risking amputation. He was in substantial pain and for about one month walked with a severe limp. At the time of trial his activities continued to be restricted because of the injury.

At trial, Major identified Elie as one of the shooters, testifying that he recognized Elie's voice saying "MK" and also recognized his face. Elie presented an alibi defense, with his father and his brother's girlfriend testifying that he was at his residence celebrating his brother's birthday the night of July 31, 2004.

For this incident, Elie was convicted of attempted murder and assault with a firearm, with true findings on personal firearm discharge causing great bodily injury and gang enhancements.

Elie received a nine-year upper term sentence for attempted murder, and a 25-years-to-life sentence for the personal firearm discharge causing great bodily injury enhancement.

(Lodg. No. 6 at 3-4.)

**III.   DISCUSSION**

**A.   Standard of Review**

Title 28, United States Code, § 2254(a), sets forth the following scope of review for federal habeas corpus claims:

> The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the

> ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

28 U.S.C. § 2254(a).

A federal court may not grant an application for writ of habeas corpus on behalf of a person in state custody with respect to any claim that was adjudicated on the merits in state court proceedings unless the adjudication of the claim: (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established [f]ederal law, as determined by the Supreme Court of the United States;" or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); Woodford v. Visciotti, 537 U.S. 19, 24-26 (2002); Early v. Packer, 537 U.S. 3, 8 (2002); Williams v. Taylor, 529 U.S. 362, 405-09 (2000).

"Clearly established [f]ederal law" refers to the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision. Lockyer v. Andrade, 538 U.S. 63 (2003). A state court's decision is "contrary to" clearly established federal law if: (1) it applies a rule that contradicts governing Supreme Court law; or (2) it "confronts a set of facts . . . materially indistinguishable from a decision of the Supreme Court but reaches a different result. See Early, 537 U.S. at 8; Williams, 529 U.S. at 405-06.

"Unreasonable application" requires the state court decision to be "objectively unreasonable, not just incorrect or erroneous." Lockyer, 538 U.S. at 65; Wiggins v. Smith, 539 U.S. 510, 520-21 (2003); see also Clark v. Murphy, 331 F.3d 1062, 1068 (9th Cir. 2003), cert. denied 540 U.S. 968 (2003). More specifically, to establish an "unreasonable application" of clearly established Supreme Court precedent, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington v. Richter, 131 S.Ct. 770, 786-87 (2011).

A state court decision involves an "unreasonable application" of governing Supreme Court law if the state court: (1) identifies the correct governing Supreme Court law but

unreasonably applies the law to the facts; or (2) unreasonably extends a legal principle from governing Supreme Court law to a new context where it should not apply, or unreasonably refuses to extend that principle to a new context where it should apply.  Williams, 529 U.S. at 407.  Under this prong, a federal court may grant habeas relief "based on the application of a governing legal principle to a set of facts different from those of the case in which the principle was announced."  Lockyer, 538 U.S. at 76; see also Woodford v. Visciotti, 537 U.S. at 24-26 (state court division "involves 'an unreasonable application' of clearly established federal law if it identifies the correct governing Supreme Court law but unreasonably applies the laws to the facts).  "Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary."  Miller-El v. Cockrell, 537 U.S. 322, 340 (2003) (citing 28 U.S.C. § 2254(e)(1)); see, e.g., Moses v. Payne, 555 F.3d 742, 745 n.1 (9th Cir. 2009).

Where there is no reasoned decision from the state's highest court, the Court "looks through" to the underlying appellate court decision.  Ylst v. Nunnemaker, 501 U.S. 797, 801-06 (1991); Delgadillo v. Woodford, 527 F.3d 919, 925 (9th Cir. 2008).  If the dispositive state court order does not "furnish a basis for its reasoning" because the state courts rejected a claim without comment,  federal habeas courts must conduct an independent review of the record to determine whether the state courts' unexplained decisions were contrary to, or involved an unreasonable application of, "clearly established" governing Supreme Court law. See Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000) (overruled on other grounds by Lockyer, 538 U.S. at 75-76); accord Himes v. Thompson, 336 F.3d 848 (9th Cir. 2003).

"Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable."  Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003).  However, a state court need not cite Supreme Court precedent when resolving a habeas corpus claim. Early, 537 U.S. 3, 8 (2002).  What matters is whether the last reasoned decision reached by the state court was contrary to Supreme Court law, not the intricacies of the analysis.  Hernandez v. Small, 282 F.3d 1132, 1140 (9th Cir. 2002); see also Harrington, 131 S.Ct. at 784.  "[S]o long

as neither the reasoning nor the result of the state-court decision contradicts [Supreme Court precedent]," the state court decision will not be "contrary" to clearly established federal law. Early, 537 U.S. 3, 8 (2002).

### B.     Denial of Bifurcation

Petitioner argues that the trial court committed prejudicial error by denying his motion to bifurcate gang enhancement allegations from the trial of the underlying offenses. (Doc. No. 1 at 7.) Petitioner's argument does not state a specific constitutional violation. Federal habeas relief is not a vehicle for reexamining state-court determinations of state law. Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). Accordingly, to the extent that Petitioner is alleging only that the trial court abused its discretion in denying his bifurcation motion, his claim is not cognizable to habeas review by this Court. See id.

Construing Petitioner's claim liberally as alleging a Due Process violation, Petitioner must prove that the trial court's decision not to bifurcate rendered the ensuing trial fundamentally unfair. Davis v. Woodford, 384 F.3d 628, 638 (9th Cir. 2004). Any error as to joinder of issues requires reversal only if actual prejudice is shown, that is if the joinder has a substantial and injurious effect or influence on the jury's verdicts. Id. "In evaluating prejudice, the [federal habeas court] focuses primarily on the cross-admissibility of evidence and the danger of 'spillover' from one charge to another, especially where one charge . . . is weaker than another." Id. The risk of prejudice is heightened where joinder of issues "allows evidence of other crimes to be introduced in a trial where the evidence would be otherwise inadmissible." Sandoval v. Calderon, 241 F.3d 765, 772 (9th Cir. 2000).

Here, evidence of Petitioner's gang affiliation would have been admissible in a separate attempted murder trial because it was relevant to identifying Petitioner as the culprit. "[E]vidence of gang affiliation is admissible when it is relevant to a material issue in the case." United States v. Easter, 66 F.3d 1018, 1021(9th Cir. 1995). Because witnesses heard the gang name "MK" shouted out immediately before the shooting, Petitioner's affiliation with Murder

Krew (MK) would be relevant to establishing that he was involved in the July 31st shooting. People v. Elie, 2008 WL 4917904, at *3 (Cal. Ct. App. 2008).

Even assuming that the gang evidence was inadmissible, however, the error did not have a prejudicial effect on the verdicts. Davis, 384 F.3d at 638. Evidence apart from Petitioner's gang affiliation implicates him in the shooting. At trial, Michael Major identified Elie as one of the shooters, testifying that he recognized Elie's voice and face. (Lodg. No. 6 at 3-4.) Thus, given that there was a means of identifying Petitioner separate from his gang affiliation, evidence of such affiliation did not have a substantial and injurious effect on the verdicts. See Davis, 384 F.3d at 638. Accordingly, the trial court's denial of Petitioner's bifurcation motion did not render the proceedings fundamentally unfair; there was no Due Process violation. See id.

**C.     Denial of New Trial Motion**

Petitioner argues that the trial court violated his Sixth Amendment right to trial by jury in denying Petitioner's motion for a new trial. (Doc. No. 1 at 8.) Petitioner moved for a new trial to introduce Ismael Hernandez's confession that he had shot Michael Major as well as Eric Dubose's testimony impeaching Major's identification of Petitioner. Id. The court denied the motion because the two witnesses were not newly discovered and their testimony would not have resulted in different verdicts. Elie, 2008 WL 4917904, at *4. Petitioner contends that a jury should have had the opportunity to evaluate the credibility of Hernandez and Dubose's statements before the trial judge denied his motion. (Doc. No. 1 at 8.)

The Court concludes that it was within the judge's discretion to assess the witness' credibility and rule on the new trial motion accordingly. "The decision, when based upon the proper legal standard, to grant or deny a motion for a new trial based upon newly discovered evidence is within the sound discretion of the trial judge." United States v. Krasny, 607 F.2d 840, 845 (9th Cir. 1979). In reviewing a new trial motion, it is for the judge, not the jury to "weigh the evidence and assess the credibility" of witnesses whose testimony constitutes new evidence. Landes Constr. Co. v. Royal Bank of Can., 833 F.2d 1365, 1371 (9th Cir. 1987). Accordingly, the court did not violate Petitioner's Sixth Amendment right in denying a motion for new trial.

Moreover, Petitioner cannot show prejudice from the decision. Habeas relief will only be granted if the "[state court] applied harmless-error review in an 'objectively unreasonable' manner." Mitchell v. Esparza, 540 U.S. 12, 17-18 (2003) (citation omitted). Here, the Court of Appeal's conclusion that the testimony of Hernandez and Dubose would not have resulted in a different verdict was an objectively reasonable basis for upholding the decision below.

With respect to Hernandez's confession to the attempted murder, the appellate court reasoned that:

> [Hernandez's] testimony was 'patently unbelievable' when considered in light of the witness' testimony at trial, and thus the jury would not have reached a different result. . . . Hernandez's description of the shooting was markedly different from the witness testimony presented at trial. The trial witnesses described more than one person involved in the shooting and identified one or more of them as African-American. . . . In contrast, Hernandez's description of the shooting involved a sole Hispanic male, himself. . . . The reasonableness of the trial court's ruling is further supported by the fact that Hernandez had virtually nothing to lose by claiming responsibility for the shooting since he was serving a lengthy prison sentence for another crime.

(Lodg. No. 6 at 15-16.)

With respect to Dubose's statements, the appellate court concluded that:

> Dubose . . . testified that after the shooting, Major told him that he thought he recognized Elie's voice during the shooting, but he did not actually see Elie. . . . [But that] the jury heard this precise impeachment evidence from another source. In Major's tape recorded interview at the hospital, Major told Detective Grayson that he could *not* positively identify the faces of the men who were shooting at him. Evidence that is merely cumulative does not warrant a new trial unless the evidence is such that it creates a reasonable probability of a different result upon retrial. . . . [V]ia the recorded statement, the jury was presented with impeachment evidence that was even stronger than Dubose's testimony on this point. Notwithstanding the recorded impeachment evidence, the jury credited the identification evidence and concluded Elie was a shooter.

Elie, 2008 WL 4917904, at *3, *10.

In both instances, the appellate court's rationale for upholding the denial of a new trial motion was objectively reasonable. (See Lodg. No. 6 at 3-4.) Accordingly, Petitioner did not suffer any prejudice from the appellate court's affirmation of the order denying the motion for new trial.

///

### D.     Insufficient Evidence

Petitioner argues that there was insufficient evidence to convict him of attempted murder and brandishing a firearm. (Doc. No. 1 at 9.) When determining whether there is sufficient evidence to support a conviction, federal habeas courts look to the record of evidence adduced at trial. Jackson v. Va., 443 U.S. 307, 319 (1979). "The relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime[s] beyond a reasonable doubt." Id. The federal court must "apply [] [this standard] with an additional layer of deference" to the state court's decision. Juan H. v. Allen, 408 F.3d 1262, 1274 (9th Cir. 2005). Upon examining the record, the Court concludes that the evidence was sufficient for a rational trier of fact to find Petitioner guilty beyond a reasonable doubt.

In California, attempted murder requires proof of a "specific intent to kill and the commission of a direct but ineffectual act toward accomplishing the intended killing." People v. Lee, 31 Cal. 4th 613, 623 (2003). Intent to kill may be inferred from the defendant's acts and the crime's attendant circumstances. People v. Smith, 37 Cal. 4th 733, 741 (2005). The appellate court highlighted the evidence as follows:

> Major's testimony identifying Elie as the shooter was not physically impossible nor inherently improbable. To the contrary, the plausibility of Major's identification of Elie as one of the shooters was supported by the circumstantial evidence that several witnesses heard "MK" being shouted at the time of the shooting, Elie was a leader of the MK, and Major had been in frequent contact with Elie for several years and thus was very familiar with his voice and face.

(Lodg. No. 6 at 23-24.)

Inasmuch as Major identified Petitioner as the shooter, a rational jury could find that by shooting at Major, Petitioner committed a "direct but ineffectual act toward accomplishing the intended killing." See Lee, 31 Cal. 4th at 623. Further, from that act it could be rationally inferred that Petitioner intended to kill Major. See Smith, 37 Cal. 4th at 741.

Under California law, unlawful brandishing of a weapon is "drawing or exhibiting any firearm, whether loaded or unloaded, in a rude, angry, or threatening manner," or "in any manner

unlawfully us[ing] the same in any fight or quarrel." Cal. Penal Code § 417(a)(2). In reviewing the trial record, the appellate court concluded that:

> Tyler Reese and Ryan Faber testified at trial regarding the September 2003 incident. They testified that after a fight broke out at the party, two or three males yelled gang slurs, shot guns, and then fled in a vehicle. Shortly after being notified of the shooting, the police stopped a suspect vehicle in El Cajon. Elie was one of the occupants of the car. The police found two guns on the ground about 200 feet from the suspects' vehicle. Empty shell casings at the scene of the shooting matched the type of guns found near the car. Reese and Faber participated in a curbside lineup of the vehicle's occupants. Reese and Faber testified that at the curbside lineup they selected the person in People's Exhibit 20 as one of the shooters. People's Exhibit 20 depicted a photograph of Elie.

(Lodg. No. at 24-25.)

Given that the Petitioner was positively identified, a rational jury could conclude based on the foregoing evidence that Petitioner "unlawfully us[ed] [a firearm] in a[] fight or quarrel." See Cal. Penal Code § 417(a)(2).

Accordingly, there was sufficient evidence for the jury to convict Petitioner of attempted murder and unlawful brandishing of a firearm.

**E.   Sentencing Issues**

Petitioner argues that the trial court's imposition of an upper term sentence violates his Sixth Amendment right to a trial by jury under Apprendi, 530 U.S. at 490. (Doc. No. 18-1 at 26.) Specifically, Petitioner contends that the upper term sentence was unconstitutional because it was based on factors found by the trial judge instead of the jury beyond a reasonable doubt. (Doc. No. 1 at 10.) The Court disagrees.

Under California's then-existing determinate sentencing law, the middle term serves as both the default sentence and the statutory maximum. Cunningham v. Cal., 549 U.S. 270, 271(2007); Cal. Penal Code § 1170(3)(b) (amended 2007). Any sentence "above the statutory maximum based on a fact, other than a prior conviction, not found by a jury or admitted by the defendant" is proscribed by Sixth Amendment's jury trial guarantee. Cunningham, 549 U.S. at 274-75 (citing Apprendi, 530 U.S. at 490). However, if one aggravating factor is found in a manner consistent with the Sixth Amendment, the trial court can legally impose an upper term sentence. Butler v. Curry, 528 F.3d 624, 648-49 (9th Cir. 2008). The judge may then consider

additional factors relevant to the imposition of a sentence within the authorized range. See id. The presence of a felony conviction is an aggravating factor. (Cal. Penal Code §190.05(h)(3).) Therefore, once a defendant is eligible for an upper term sentence because of a prior conviction, the trial judge may consider other factors in setting the term of years within the range prescribed by statute. Butler, 528 F.3d at 643.

Here, the superior court relied on three factors in enhancing Petitioner's sentence beyond the statutory maximum: (1) that the crime involved vulnerable victims, (2) that Petitioner showed no remorse for his crimes, and (3) that Petitioner had a prior conviction. Elie, 2008 WL 4917904, at *12. Petitioner concedes that he was eligible for an upper term sentence based on his prior conviction alone. Id. Thus, the trial court's sentencing procedure did not violate Petitioner's jury trial rights. See Butler, 528 F.3d at 648-49.

## IV. CONCLUSION

For the reasons set forth above, the Court **DENIES** Petitioner's petition for writ of habeas corpus and adopts the Report and Recommendation. The Court also **DENIES** a certificate of appealability.

**IT IS SO ORDERED.**

DATED: June 9, 2011

MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT